HAINES and others *against* BEACH and others.

To a bill for foreclosure, and sale of mortgaged premises, all incumbrancers, or persons having an interest, existing at the commencement of the suit, subsequent as well as prior, in date, to the plaintiff's mortgage, must be made parties, otherwise they will not be bound by the decree.

A prior mortgagee, who had also a judgment against the mortgagor, subsequent to a second mortgage, and on a sale of the premises under the judgment, had purchased the equity of redemption, cannot, on a bill filed against the second mortgagee, compel him to pay the judgment, as well as the first mortgage, or be foreclosed. But the incumbrances are to be paid in the order of time in which the respective *liens* attached.

THE bill stated, that the plaintiffs are the executors of *Rebecca B. Brazier*, deceased, and that *S. M. Brazier*, the infant, is sole heir and devisee of *R. B. B.*, deceased. That, on the 15th of *March*, 1808, *Daniel Beach*, defendant, executed a bond to *R. B. B.* for 4,000 dollars, payable on the 15th of *March*, 1811; and a mortgage on a lot of ground in *Cortlandt street*, as security, which was registered the 18th of *March*, 1808. *R. B. B.* died about the 25th of *August*, 1812; and her will was duly proved, and letters testamentary were granted by the Surrogate of *New-York*; that neither she, nor her executors, have been in possession of the premises mortgaged. Part of the interest on the mortgage had been paid, but the principal, and the residue of interest, still remained unpaid. Prior to the execution of this mortgage, *Beach* and his wife, on the 24th of *December*, 1804, mortgaged the same premises to *Thomas Gardner*, to secure the payment of 1,000 dollars. *Gardner*, in *April*, 1815, filed a bill for foreclosure and sale, and a decree for the sale was made the 21st of *September*, 1815, and the premises sold by the Master, on the 23d of *November*, 1815, to the defendant, *Moses Field*.

The bill charged, that *Gardner*, by the *registry* of the mortgage to *Brazier*, and the *probate* of her will, had notice

*July 1st and September 28th.*

of the rights and interest of the plaintiffs, but did not make them parties to his suit, nor give them any notice of it; and the plaintiffs, therefore, insisted, that they were not barred of their rights and interest in the premises, subject only to the debt due to *Gardner* on his prior mortgage. That there are judgments unsatisfied of record against *Beach*, the mortgagor, one of which is in favour of *Jonathan Dixon*, for 9,500 dollars, docketed the 12th of *February*, 1812, and that *Dixon* is dead, leaving the defendants, *H. D. & R.* his executors; and another judgment in favour of the defendant *Strong*, docketed the 26th of *August*, 1814, for 278 dollars and 84 cents. Prayer, that the mortgaged premises may be sold, and that, after paying and satisfying the first mortgage to *Gardner*, the plaintiffs might be paid what is due to them on the bond and mortgage to their testatrix.

*Field*, defendant, put in his answer and plea, admitting the mortgage to *G.*, and the bill and decree, and sale of the premises to him, by the Master, for 1,508 dollars, and the deed of the Master to him for the premises, of which he was in possession; and pleaded the same in bar of this suit. In his *answer*, he said, he did not know whether *Gardner* had knowledge of the mortgage to *R. B. Brazier*; and that he did not know of the judgments. That the plaintiffs had knowledge of *Gardner's* suit long prior to the decree or sale, and that the Master postponed the sale at their request; and that the defendant had expended 229 dollars and 60 cents, in repairs.

It was proved, that the defendant, *Field*, had notice of the mortgage, to *Brazier*, before he bid at the Master's sale; and that the Master, before the sale, gave public notice of the existence and amount of the junior mortgage, and that the sale would be subject to the same. The lot was worth about 7,000 dollars, exclusive of improvements.

*Wells*, for the plaintiffs.

*D. B. Ogden*, contra.

1818.

HAINES
v.
BEACH.

The cause stood over for consideration until this day. *September 28th.*

THE CHANCELLOR. After an attentive examination of the cases, and of the course and practice of the court, I am satisfied that the plea must be overruled, and that the plaintiffs, as representatives of the younger mortgagee, are entitled to redeem against *Field*, the purchaser.

It was the duty of *Gardner* to have made the younger mortgagee a party to his bill; and all incumbrancers existing at the commencement of the suit are entitled to be parties, for they have an interest to be affected, and ought to have an opportunity of paying off the prior incumbrances. The injustice that would be produced if they were to lose their rights, because they are not made parties, is very apparent. The rule, therefore, has been well settled, and uniformly supported, that the subsequent incumbrancers must be parties, and if omitted, the decree will not bind their rights.

In this case, the purchaser had notice, at and prior to the sale, of the mortgage of the plaintiffs, and of their claim, and the lot was put up and sold, and, no doubt, purchased by the defendant, *Field*, subject to the equitable claim of the plaintiffs. This was clearly established by the testimony, and there can be no doubt of their just claim in this case, in opposition to the plea.

But I think, that the title of the plaintiffs to redeem would have existed, independent of the fact of notice; and for the better understanding of this point, the decisions must be examined.

In *Draper* v. *The Earl of Clarendon*, (2 *Vern.* 517.) there was a bill by a prior against a subsequent mortgagee, and the court said, that the defendant must redeem

in six months, or be foreclosed; and it being objected, that some intervening incumbrancers were not parties, it was answered that the plaintiff might "foreclose such defend, ants as he had brought before the court."

This decision seems to admit the rule, that the subsequent mortgagee is entitled, and must have the opportunity to redeem, and that the incumbrancers who are not made parties will not be bound.

The next case, of *Godfrey* v. *Chadwell* (2 *Vern.* 601.) was a suit to redeem, brought by the second mortgagee against the first, and the latter put in a demurrer, and also a plea of a decree of foreclosure upon his mortgage, without notice of the second mortgage, and the plea and demurrer were overruled.

This decision settles the point more directly, that the subsequent mortgagee must be a party; that he is not bound, if he be not a party, and that his rights are not affected by the want of notice of them.

In *Morret* v. *Westerne* (2 *Vern.* 663.) the first mortgagee had a decree of foreclosure, and then subsequent judgment creditors filed their bill against him to redeem, and for an account of rents and profits. The decree of foreclosure was pleaded in bar of any new account, and notice of the subsequent incumbrances was denied, yet the plea was overruled.

All these were decisions by Lord Chancellor *Cowper*, in the beginning of the last century, and I think they settle the rule decisively in favour of the rights of the junior incumbrancer, whether he be such by mortgage or by judgment.

The same doctrine was held by Lord *King*, in *Hobart* v. *Abbott.* (2 *P. Wms.* 643.) *A.* made a mortgage of a term to *B.*, who assigned it to *C.*, reserving a right to himself to redeem on paying a certain sum. *B.* dies, and *C.* brings his bill to foreclose against *A.*, without making the representatives of *B.* parties; and it was held to be a

plain case of a want of proper parties, *for B. had a right to redeem.*

In the modern case of *Fell* v. *Brown*, (2 *Bro.* 276.) there was a bill by a second against a first mortgagee to redeem, but as the heir of the mortgagor, who was dead, was absent, and the personal representatives not before the court, Lord *Thurlow* ruled, that there was a want of parties, and that the mortgagor, or his heir, must be a party, because he is interested in taking the account, and that the natural decree was, that the second mortgagee redeem the first mortgagee, and that the mortgagor redeem him, or stand foreclosed. The same rule was afterwards laid down in *Palk* v. *Clinton*, (12 *Vesey*, 48. 59.) and the Master of the Rolls in that case avoided the general question, whether it was necessary to make all incumbrancers parties, and only decided that you could not agitate the question of redemption as between two mortgagees, without making the mortgagor a party. In the case of *The Bishop of Winchester* v. *Beavor*, (3 *Vesey*, 314.) the subject was fully discussed. That was a bill by the first mortgagee against the mortgagor, and the second mortgagee, to foreclose, and the answer of the mortgagor stated a *judgment* against him, between the first and second mortgages. The second mortgagee objected at the hearing, that the judgment creditor was not a party, and it was urged, on his part, that a judgment creditor had a right to come to foreclose, as a mortgagee; that in all bills of this kind there was an interrogatory, whether there were any, and what incumbrances, and if the answer stated any, the practice was to make them parties; that all judgment creditors and mortgagees must be parties, because interested in the account to be taken, but that judgments confessed by the mortgagor *pendente lite* would not be regarded. The Master of the Rolls admitted, that a judgment confessed after a bill filed, would not create any equity, and observed, that the general course of the court

and the practice, almost without exception, had been to make all incumbrancers parties, for they had a right to redeem; and the practice was founded on the gross injustice that would otherwise ensue in allowing the mortgagor to redeem his equity, when a subsequent incumbrancer was entitled to it. He ordered the cause to stand over until the judgment creditor was made a party, but still felt unwilling to lay down the rule absolutely, that the court was bound to insist upon all incumbrancers being parties.

One of the points in this case, on which Lord *Alvanley* gave an opinion, was again considered and established in *The Bishop of Winchester* v. *Paine*, (11 *Vesey*, 197, 198.) where it was held not to be necessary, on a bill to foreclose, to make incumbrancers, who became such *pendente lite*, parties. But this very case strongly implies, that all other incumbrancers, not within that exception, must be parties.

The necessity of making the subsequent incumbrancers parties, or holding their rights unimpaired, appears to be much stronger, and is indispensable to justice, in cases of decrees for sales, according to our practice; for otherwise the mortgagor would take the surplus *money*, or the cash value of the equity of redemption, and defeat entirely the lien of the subsequent creditor. But their rights cannot be destroyed in this way, and the purchaser will take only a title *as against the parties to the suit*, and he cannot set it up against the subsisting equity of those incumbrancers who are not parties. This is the necessary doctrine resulting from the cases which have been mentioned; and that of *Sherman* v. *Cox*, (3 *Ch. Rep.* 46.) is still more in point. *R.* mortgaged his estate to *S.*, and then to *P.*, and then to the plaintiff, and then to *B.*, who buys in the first two mortgages. The plaintiff brings his bill against the mortgagor and *B.*, and no proceedings were had, but *B.* had notice of the plaintiff's title. Then, *B. files his bill against the mortgagor*, who was in possession. He

had a decree and an account, and time to set the mortga- 1818.
gor to redeem or be barred. The time expired, and the
mortgagor was foreclosed of his equity, and *B. then sold* HAINES
*his right to the defendant,* and the plaintiff, who had not BEACH.
been a party to *B.'s* bill of foreclosure, brings his bill to
redeem, and the *defendant pleads his purchase of the equi-
ty of redemption which had been barred.* The question
was, whether the plaintiff, who was no party to the bill of
foreclosure, ought to be let in to redeem; and Lord *Not-
tingham* declared it was a question of election between
one inconvenience and another. He admitted, it was
"extremely mischievous" to the mortgagee to make all
persons parties who had interest, but that he would be
finally consoled in having his principal, interest, and costs.
But he said, if the plaintiff should not be relieved in that
case, "it would be an irreparable loss and ruin, and he
thought trouble and pains less prejudicial than ruin and
total loss." So he overruled the plea, but said that the
account stated should stand, unless collusion was shown.

This last point, as to the account not being opened, had
been so ruled before, in *Needler* v. *Deeble,* (1 *Ch. Cas.*
299.) and the general doctrine established in this case,
appears to me to be well founded, and to have been hand-
ed down unimpaired to this day. In a recent case before
the House of Lords, (*Gore* v. *Stacpoole,* 1 *Dow.* 31.) Lord
*Eldon* said, that in order to make a foreclosure valid
against all claimants, he who had the first estate of inhe-
ritance must be brought before the court, and that the
intermediate remainder-men ought to be brought before
the court, to give them an opportunity of paying off the
mortgage. The case of *Mondey* v. *Mondey,* (1 *Vesey &
Bea.* 223.) shows the modern practice on the point.
That was a bill against the infant heir of the mortgagor
and against prior mortgagees, praying that the plaintiff
might be permitted to redeem the *prior* mortgages, and
the heir decreed to redeem the whole, and that such of

1818.

HAINES
v.
BEACH.

the defendants as were *subsequent* mortgagees, might re-
deem the plaintiff, or that the property be sold, and the
money applied to discharge the incumbrances according
to priority, and the surplus, if any, secured to the infant
heir. The usual reference was made to take an account
of the moneys due to the several incumbrancers, and to
ascertain and report their several priorities, with the
usual directions for the subsequent incumbrancers to re-
deem the prior, in the usual course, &c.

After such a long and uniform practice of the court,
making every incumbrancer existing at the filing of the
bill a party, and seeing it is founded on such weighty
reasons of justice, there can be no hesitation as to the
right of the plaintiffs in the present case to redeem. A
reference must accordingly be had, to ascertain the amount
due to the plaintiffs upon their bond and mortgage;
and the amount of the debt ascertained and declared in
the decree in the former suit, and the value of the per-
manent and useful repairs made by the defendant *Field*
on the mortgaged premises since his purchase, and prior
to his plea, and that the Master report, &c.

Order accordingly.

A prior mort-
gagee, who has,
also, a judgment
against the mort-
gagor, subse-
quent in date to
a second mort-
gage, and has on
a sale of the
premises under
the judgment,
purchased the
equity of re-
demption, can-
not, on a bill filed
against the se-
cond mortgagee,
compel the se-
cond mortgagee
to pay off the
judgment

[In the case of *M'Kinstry* v. *Mervin and others*, the
plaintiff owned a bond and mortgage, registered the 13th
of *May*, 1815, and the defendant owned a bond and mort-
gage upon the same lands, registered the 14th of *March*,
1816, and the plaintiff owned a judgment against the mort-
gagor, docketed 11th of *November*, 1816, and under which
he had sold, and become the purchaser of the mortgagor's
equity of redemption. Under these circumstances, the
plaintiff filed his bill to compel the defendant, by a day
certain, to discharge his mortgage and judgment debts, or

as well as the first mortgage, or be foreclosed. The incumbrances are to be paid off
according to the order of time in which the respective *liens* attached.

be foreclosed. The defendant, in his answer, offered to discharge the mortgage debt of the plaintiff, and the costs, but this was not accepted.

The case being submitted, upon the bill and answer, *the* CHANCELLOR, (*September* 10th, 1818,) held, that the lands bound by the incumbrances in the pleadings mentioned, were chargeable, (1.) for the mortgage debt of the plaintiff, (2.) for the mortgage debt of the defendant, (3.) for the judgment debt of the plaintiff, and that the debts were to be paid according to the order of time in which the respective liens attached, and that the plaintiff was not entitled to require of the junior mortgagee to pay the judgment debt before he could redeem. It was, accordingly, decreed, that it be referred to a Master, to compute the amount of principal and interest due on the first mortgage, and that the defendant pay the same, with interest and costs, in six months from the confirmation of the report, or be foreclosed. The six months was the usual allowance in such cases of bills for a strict foreclosure. (1 *Maddocks' Ch. Rep.* 287. 17 *Vesey*, 382. 407. *Cooper's Eq. Rep.* 28. 2 *Desausseur's S. C. Rep.* 144.)]