[No. S004027. Aug. 24, 1989.]

MONTEREY S.P. PARTNERSHIP, Plaintiff and Respondent, v. W. L. BANGHAM, INC., Defendant and Appellant.

457

Don H. Teague and Teague & George for Defendant and Appellant.

Harry D. Miller, Edmund L. Regalia, John G. Sprankling, Gary E. Rosenberg, Miller, Starr & Regalia, David M. Marcus and Hirschman & Marcus for Plaintiff and Respondent.

John R. Hetland, Charles A. Hansen and Hetland & Hansen as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

**LUCAS, C. J.**—We consider whether the interest of the beneficiaries under a deed of trust is affected by a default judgment in a mechanic's lien foreclosure suit in which the trustee under the deed of trust was served with the summons and complaint, but the beneficiaries were not served. We conclude that the beneficiaries' interest was not affected by the default judgment, and that the successor to the beneficiaries' interest under the deed of trust therefore owns the property in question free and clear of the mechanic's lien and default judgment.

## I.  *Facts*

By a deed of trust recorded in February 1981, Oak Knoll Partnership (Oak Knoll) encumbered property it owned in South Pasadena, California (the property) as security for repayment of a $2 million promissory note. The deed of trust named Oak Knoll as trustor, Hallmark Reconveyance Corporation as trustee, and Hallmark Acceptance Corporation as beneficiary. Hallmark Acceptance Corporation assigned its beneficial interest in the deed of trust to 252 beneficiaries (the beneficiaries) by an assignment recorded in early March 1981. By recorded substitutions, the beneficiaries substituted Western Mutual Corporation (Western) as trustee in place of Hallmark Reconveyance Corporation.

When Oak Knoll missed payments on the promissory note, the beneficiaries recorded a series of notices of default. On May 4, 1984, after Oak Knoll failed to cure its default, Western conducted a trustee's sale under the deed of trust. The beneficiaries purchased the property at the sale for $650,000. Following two intermediate conveyances, plaintiff Monterey S.P. Partnership (Monterey) obtained title to the property by a quitclaim deed recorded in early August 1985.

Meanwhile, in June 1982, defendant W. L. Bangham, Inc. (Bangham) had recorded a mechanic's lien claim of $44,310.83 against the property. That claim was based on engineering design, drafting, field survey work, and construction layout that Bangham performed, commencing in 1979, at the direction of Oak Knoll and prior owners of the property. In September 1982, Bangham filed an action for a money judgment and to foreclose its mechanic's lien. Bangham recorded a lis pendens in January 1984. On May 3, 1984, the day before Western conducted the trustee's sale to the beneficiaries, Bangham served Western with a summons and complaint as "Doe 1" in its mechanic's lien foreclosure action. Although the beneficiaries were named as defendants in the complaint, they were not served. That October, Bangham amended its complaint to substitute Western in the place of the fictitious "Doe 1," and concurrently filed a request to enter default against Western. The following April, Bangham recovered judgment by default against Western.[1]

In early November 1985, pursuant to the default judgment, the sheriff conducted a public sale of the property. Bangham, the highest bidder, acquired the property for $56,254.23, and received a sheriff's deed. Monterey then sued Bangham for a judgment (1) quieting title to the property; (2) declaring that the sheriff's deed to Bangham was of no force and effect against Monterey's interest in the property; and (3) allowing Monterey to redeem the property from the sheriff's sale. The superior court granted Monterey's motion for summary judgment on the first two counts of its complaint (quiet title and declaratory relief).

Bangham appealed and the Court of Appeal reversed, holding that former section 369 of the Code of Civil Procedure[2] (hereafter former section

---

[1] The default judgment (1) awarded Bangham $44,310.83 plus interest and court costs; (2) stated that Bangham's lien had a commencement date of April 30, 1979 (see Civ. Code, § 3134 [mechanic's lien is "preferred to any lien, mortgage, deed of trust, or other encumbrance upon the work of improvement and the site, which attaches subsequent to the commencement of the work of improvement"]); (3) ordered sale of the property under the mechanic's lien to satisfy the money judgment; and (4) ordered that "all persons claiming . . . from or under [the defendants, including Western], and all persons having or claiming to have acquired any estate or interest in [the property] subsequent to the commencement of this action, be forever barred and foreclosed of any claim in, of, and to [the property] from and after the delivery of [the] Sheriff's deed." The judgment did not name the beneficiaries.

[2] After we granted review of the Court of Appeal decision, the Legislature amended section 369, effective January 1, 1989. (See Stats. 1988, ch. 530, § 2, No. 3 Deering's Adv. Legis. Service, p. 1816.) Section 369, subdivision (a), now states that "a person upon whom a power of sale has been conferred pursuant to a deed of trust or mortgage" is *not* "a trustee of an express trust" within the meaning of that section. The same legislation added section 2937.7 to the Civil Code. That section provides: "In any action affecting the interest of any trustor or beneficiary under a deed of trust or mortgage, service of process to the trustee does not constitute service to the trustor or beneficiary and does not impose any obligation on the trustee to *notify the* trustor or beneficiary of the action." However, the Legislature expressly stated

369) entitled Bangham to prosecute a binding mechanic's lien foreclosure against Western, as trustee under the deed of trust, without joining the beneficiaries. That section provided: "An executor or administrator, or trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the persons for whose benefit the action is prosecuted. *A person with whom, or in whose name, a contract is made for the benefit of another, is a trustee of an express trust,* within the meaning of this section." (Italics added.) The Court of Appeal held that Western, as trustee under the deed of trust, was a "trustee of an express trust" as defined in former section 369, and that former section 369, by implication, authorized a trustee to defend an action against the trust without joining with him the beneficiaries of the trust.

## II. *Discussion*

■ Monterey asserts that Bangham's default judgment and the subsequent sheriff's sale could affect only the interests of the parties named in the complaint *and* served with summons. Monterey therefore concludes that, because the beneficiaries under the deed of trust from which Monterey claims title were not served with summons, it now owns the property free and clear of the mechanic's lien and default judgment in favor of Bangham.[3] We agree.

It has long been established in this state that all persons with an interest in the subject real property at the time suit is brought to enforce a mechanic's lien on that property must be made parties to the suit. If they are not made parties, "they are, in no respect, bound by the decree or proceedings thereunder." (*Whitney* v. *Higgins* (1858) 10 Cal. 547, 551.) As the Court of Appeal recognized, that principle endures to this day. (See, e.g., *Frank Pisano & Associates* v. *Taggart* (1972) 29 Cal.App.3d 1, 22-23 [105 Cal.Rptr. 414].)

Although *Whitney, supra,* 10 Cal. 547, involved the effect of a mechanic's lien foreclosure on the rights of a mortgagee, the holding applies equally to

its intent that "this act shall not create an inference regarding the status or application of the law prior to the effective date of these changes." (Stats. 1988, ch. 530, § 3, No. 3 Deering's Adv. Legis. Service, p. 1816.) Thus, the amendment to section 369 and the addition of Civil Code section 2937.7 do not clarify the law prior to January 1, 1989, and therefore do not resolve the matter before us.

[3] If, by failing to serve the beneficiaries, Bangham established and foreclosed its mechanic's lien without obtaining a proper adjudication of the priority of its mechanic's lien relative to the interest under the deed of trust (through which Monterey claims ownership), Bangham could not now assert priority over Monterey's interest in the property. (See *Riley* v. *Peters* (1961) 194 Cal.App.2d 296 [15 Cal.Rptr. 41] [failure to join necessary parties in mechanic's lien foreclosure action precludes mechanic's lien claimant from subsequently asserting priority over such parties or their successors].) Monterey would own the property free and clear of the mechanic's lien and default judgment.

a beneficiary under a deed of trust. ▮ As we explained in describing "the anomalous nature of deeds of trust in this state" (*Bank of Italy etc. Assn.* v. *Bentley* (1933) 217 Cal. 644, 657 [20 P.2d 940]), "deeds of trust, except for the passage of title for the purpose of the trust, are practically and substantially only mortgages with a power of sale . . . ." (*Ibid.*) In practical effect, if not in legal parlance, a deed of trust is a lien on the property.

It would be inconsistent with *Bank of Italy, supra,* 217 Cal. 644, to deny the beneficiaries the rights of mortgagees recognized in *Whitney, supra,* 10 Cal. 547, merely because the beneficiaries' security interest took the form of a deed of trust, which conveys "title" to a trustee. The deed of trust conveys "title" to the trustee "only so far as may be necessary to the execution of the trust." (*Lupertino* v. *Carbahal* (1973) 35 Cal.App.3d 742, 748 [111 Cal.Rptr. 112].) Thus, as trustee, Western had only two duties with respect to the property. Had the trustor, Oak Knoll, satisfied the debt secured by the deed of trust, Western would have been obligated to reconvey its interest in the property to Oak Knoll. (Civ. Code, § 2941, subd. (b).) In practical effect, that reconveyance is nothing more than the release of the lien of the deed of trust. When, as actually occurred, Oak Knoll defaulted on its obligation, Western was required on proper request from the beneficiaries to exercise the power of sale contained in the deed of trust. That power is carefully circumscribed by statute. (See *id.*, §§ 2924-2924h.)

The limited nature of Western's function as trustee is perhaps best illustrated by the fact that the beneficiaries, by employing statutory procedures for judicial foreclosure in response to the trustor's default, could have foreclosed without any involvement whatever of Western and its power of sale. (See Code Civ. Proc., § 725a [beneficiary or trustee under a deed of trust may bring suit to foreclose]; *Field* v. *Acres* (1937) 9 Cal.2d 110, 113 [69 P.2d 422] [trustee "has no right to complain if the beneficiary takes advantage of a statute allowing a judicial foreclosure of the deed of trust"].)

▮ Nor does the Subdivision Map Act (Gov. Code, § 66430) indicate that a trustee under a deed of trust is the sole real party in interest for our purposes here. Section 66430 provides: "No final map or parcel map required by this chapter or local ordinance which creates a subdivision shall be filed with the local agency without the written consent of all parties having any record title interest in the real property proposed to be subdivided, except as otherwise provided in this division." As stated in an Attorney General's opinion (59 Ops.Cal.Atty.Gen. 386, 389 (1976)), "[a] trustee under a deed of trust encumbering property to be subdivided is a party who has a record title interest in property for purposes of the Subdivision Map Act."

In no way, however, does the trustee's record title interest—or its role under the Subdivision Map Act generally—divest the beneficiary of its security interest in the property, nor does it suggest that the beneficiary need not be named and served in an action in order for the security of the deed of trust to be affected. Because a deed of trust typically secures a debt owed the beneficiary, it is the beneficiary, not the trustee, whose economic interests are threatened when the existence or priority of the deed of trust is challenged. Even before we declared a deed of trust to be equivalent to a mortgage with a power of sale in *Bank of Italy, supra,* 217 Cal. 644, we held that when the beneficiary of the deed of trust, but not the trustee, was a party, "[t]he real party in interest was before the court." (*Anderson* v. *Alexander* (1920) 184 Cal. 265, 266 [193 P. 241].)

■ Thus, mortgagees and trust deed beneficiaries alike hold security interests in property encumbered by mortgages and deeds of trust, and those interests are not affected by a mechanic's lien foreclosure action filed after the recordation of those encumbrances unless the mortgagees or beneficiaries are themselves named and served in that action. Merely serving the trustee is insufficient because a trustee's interest in the property is not the same as a beneficiary's.

In this case, the beneficiaries under the deed of trust were named as defendants in Bangham's suit to foreclose its mechanic's lien, but they were never brought within the court's jurisdiction by service with summons and complaint.[4] In holding that the beneficiaries nonetheless were bound by the judgment in Bangham's lien foreclosure action, the Court of Appeal relied on former section 369. ■ We disagree that former section 369 created an exception to the general rule that beneficiaries are necessary parties to an action affecting the security of a deed of trust.

Although former section 369 did not expressly authorize a trustee to *defend* a suit on behalf of the beneficiaries, the Court of Appeal held that, "by implication," former section 369 authorized such a defense. (See *Straube* v. *Security First Nat. Bank* (1962) 205 Cal.App.2d 352, 360 [23 Cal.Rptr. 213] [dictum].) We have not previously addressed this issue, and we need not reach it here for two reasons.

---

[4] Although personal service on each of 252 beneficiaries probably would be difficult, Bangham might have pursued a number of potential alternatives, including suing the beneficiaries as a class (see Code Civ. Proc., § 382); serving any of five individuals designated as "attorneys-in-fact" for the beneficiaries (see *id.*, § 416.90 [providing for service of summons upon "a person authorized . . . to receive service of process"]; and requesting permission from the trial court to serve a summons on the beneficiaries by publication (see *id.*, § 415.50 [allowing service of summons by publication if "the party to be served cannot with reasonable diligence be served in another manner specified" in the article].) Because Bangham did not attempt service on the beneficiaries in any fashion, we need not determine which of these alternatives, if any, would be permissible on the facts of this case.

First, whether former section 369 *authorized* a trustee to defend is immaterial. This is not a case in which the trustee *did defend,* and the question is not whether the beneficiaries are bound by the judgment because they were represented by the trustee. ■ The pertinent question is whether the trustee had a *duty* to defend on behalf of the beneficiaries. Former section 369 imposed no such a duty on the trustee. Nor did the deed of trust in this case obligate Western to appear in or defend an action affecting the security of that instrument. The trust deed expressly provided that Western was "not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee." Western, therefore, had no duty to defend the interests of the beneficiaries in an action that threatened the existence or priority of the deed of trust.[5] The default judgment against Western could not be binding on the beneficiaries.

■ Second, we conclude that Western, as trustee under the deed of trust, was not in any event a "trustee of an express trust" within the meaning of former section 369. The similarities between a trustee of an express trust and a trustee under a deed of trust end with the name. "Just as a panda is not a true bear, a trustee of a deed of trust is not a true trustee." (*Stephens, Partain & Cunningham* v. *Hollis* (1987) 196 Cal.App.3d 948, 955 [242 Cal.Rptr. 251].) Thus, the trustee of an express trust must consent to serve as trustee (see Prob. Code, § 15600); must not "use or deal with trust property for the trustee's own profit or for any other purpose unconnected with the trust . . ." (*id.,* § 16004, subd. (a) [former Civ. Code, § 2229]); and must not knowingly obtain interests adverse to the trust (Prob. Code, § 16005 [former Civ. Code, § 2232]). In addition, and significantly, the trustee of an express trust has broad powers over trust property. The trustee is statutorily empowered to acquire or dispose of trust property (Prob. Code, § 16226 [former Civ. Code, § 2261, subd. (a)(1); former Prob. Code, § 1120.2, subd. (5)]) and to "manage, control, divide, develop, improve, exchange, partition, change the character of, or abandon trust property or any interest therein" (Prob. Code, § 16227 [former Prob. Code, § 1120.2, subds. (1), (5)]). Perhaps most important to the case at hand, the trustee of an express trust *must* "take reasonable steps to defend actions that may result in a loss to the trust." (Prob. Code, § 16011; see also *Estate of Duffill* (1922) 188 Cal. 536, 554-555 [206 P. 42]; Rest.2d Trusts (1957) § 178.)

A trustee under a deed of trust, by contrast, can be appointed as trustee without its consent. (*Burns* v. *Peters* (1936) 5 Cal.2d 619, 623 [55 P.2d

---

[5] Not only did Western have no *obligation* to defend against Bangham's mechanic's lien foreclosure, it is difficult to imagine what *incentive* it would have had to do so. Western was served in the mechanic's lien foreclosure action the day before it conducted its trustee's sale of the property. The sale of the property to the beneficiaries and the conveyance of the trustee's deed to them extinguished the deed of trust under which Western was trustee.

1182].) As discussed above, the trustee under a deed of trust does not have a true trustee's interest in, and control over, the trust property. Nor is it bound by the fiduciary duties that characterize a true trustee. For example, "a trustee under a deed of trust is not absolutely prohibited from purchasing the trust property at the trustee's own sale." (*Stephens, Partain & Cunningham, supra,* 196 Cal.App.3d at p. 955.)

In light of these distinctions between the rights and obligations of a trustee of an express trust and Western's rights and obligations as trustee under the deed of trust, it would be unreasonable to deem Western "a trustee of an express trust" within the meaning of former section 369. Indeed, the Court of Appeal's interpretation of former section 369 would blur the consistent statutory distinction between deeds of trust and strict or voluntary trusts. (See 3 Witkin, Summary of Cal. Law (9th ed. 1987) Security Transactions in Real Property, § 7, pp. 520-521.)

▇▇▇ The Court of Appeal also relied on *Johnson* v. *Curley* (1927) 83 Cal.App. 627 [257 P. 163], which held that beneficiaries under a deed of trust were not necessary parties to an action to have that deed declared void for fraud. As plaintiff Monterey and amici curiae on its behalf point out, however, the Court of Appeal's reliance on *Johnson* was misplaced for several reasons. First, *Johnson* was decided before we clarified that a deed of trust is tantamount to a mortgage with a power of sale. (*Bank of Italy, supra,* 217 Cal. at p. 657.) Second, in *Johnson* the beneficiaries' assignor also defended the action. The court inferred from this, and from the silence of the beneficiaries on the issue, that they had actual notice of the action and that their assignor was representing their interests. (*Johnson, supra,* 83 Cal.App. at pp. 629-630.) Clearly, no such inference can be drawn from the facts of this case.

Finally, *Johnson* did not involve a trustee's default. Indeed, the trustee in *Johnson* did in fact represent and defend the interests of the beneficiaries. (83 Cal.App. at p. 629.) Moreover, the court there assumed that "the trust deed involved in this action conferred upon the trustee all necessary power and authority to act for and in behalf of the beneficiaries in everything relating to the trust" (*id.* at p. 631), and that "under the declaration of trust it became the duty of the trustee" to represent the beneficiaries in the action. (*Id.* at p. 634.)

By contrast, we cannot find that Western represented the interests of the beneficiaries in the mechanic's lien foreclosure action when it expressly had no duty to do so, when it had no incentive to make an appearance on their behalf, and when it failed to defend on its own behalf. ▇▇▇ Rather, the present case fits within the general rule that "a judgment against the trustee

alone, the beneficiary not being a party thereto, does not bind the latter
. . . ." (*Johnson, supra,* 83 Cal.App. at p. 630.)

Regrettably, it appears to be too late in the development of our vocabu-
lary to rename deeds of trust and the "trustees" who act under those
instruments. We can only emphasize that those terms are ill-suited under
modern practice to describe the true nature of trust deeds and the limited
role of trustees such as Western.

The decision of the Court of Appeal is reversed.

Panelli, J., Eagleson, J., Kaufman, J., and Kennard, J., concurred.

**MOSK, J.**—I concur in the judgment and in the court's opinion. Under
existing law the conclusion reached therein is inevitable.

I am concerned, however, with the practical result. The requirement that
the holder of the mechanic's lien must serve the beneficiaries appears to be
unduly onerous in circumstances such as those involved in this case in
which there are 252 beneficiaries.

Is it reasonable to expect a holder of a mechanic's lien—e.g., a plumber,
electrician, carpenter or artisan who performed labor or furnished material
on premises—to locate and obtain personal service on beneficiaries of a deed
of trust on the property when they are 252 in number? To ask the question
is to answer it.

The majority suggest that service by publication, service on the
beneficiaries' attorney-in-fact, or a class action lawsuit would adequately
resolve the problem. (*Ante,* p. 461, fn. 4.) However, none of these alterna-
tives, standing alone, is sufficient to ameliorate the considerable obstacles
inherent in trying to properly serve so many beneficiaries.

The majority declare that service by publication may be one possible
solution. It is true that Code of Civil Procedure section 415.50 provides for
publication. But it is hedged with numerous qualifications that make it
extremely difficult to employ.

For example, the Judicial Council comment to the section observes that
before resort to publication may be permitted, reasonable diligence must be
exercised by plaintiff "to learn defendant's whereabouts or his address by
inquiry of relatives, friends, and acquaintances, or of his employer, and by
investigation of appropriate city and telephone directories, the voters' regis-

ter, and the real and personal property index in the assessor's office, near the defendant's last known location . . . ."

Thereafter an affidavit must be filed detailing the "thorough search to locate the defendant, including the dates thereof and any attempts to serve the defendant by another method of service . . . ." In the instant case, the mechanic's lienholder would be required to describe his efforts as to each of the 252 beneficiaries.

A casual effort would not be adequate. Numerous cases have held that the requisites for service by publication must be strictly construed. (See, e.g., *Donel, Inc.* v. *Badalian* (1978) 87 Cal.App.3d 327, 334 [150 Cal.Rptr. 855]; *Harris* v. *Cavasso* (1977) 68 Cal.App.3d 723 [137 Cal.Rptr. 410]; *Bank of America* v. *Carr* (1956) 138 Cal.App.2d 727, 737 [292 P.2d 587]; *Weisfeld* v. *Superior Court* (1952) 110 Cal.App.2d 148, 151 [242 P.2d 29].)

Similarly, service on the beneficiaries' designated attorney-in-fact would not necessarily solve the problem. Without express authorization, an attorney does not have the implied authority to become an agent for service of process. (*Wilson* v. *Eddy* (1969) 2 Cal.App.3d 613, 618 [82 Cal.Rptr. 826].) Instead, the trial court must determine in each case whether the relationship between an attorney and his client is sufficiently close and enduring to make it highly probable that service on the attorney will provide actual notice to his client. (Code Civ. Proc., § 416.90, Judicial Council comment; *Warner Bros. Records, Inc.* v. *Golden West Music Sales* (1974) 36 Cal.App.3d 1012, 1017 [112 Cal.Rptr. 71].) In the absence of such a finding, the plaintiff in an action to foreclose a mechanic's lien would still be required to personally serve each beneficiary.

Finally, although a class action may eliminate some of the difficulties presented by a case in which there are multiple beneficiaries, there will still be significant notice problems. Even if the court were to permit a class action in a foreclosure action, it may nevertheless order the plaintiff to notify all of the members of the class. In a class action the trial court has the discretion to specify the appropriate form of notice. (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 454 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; *McGhee* v. *Bank of America* (1976) 60 Cal.App.3d 442, 450-451 [131 Cal.Rptr. 482].) In an action to foreclose a mechanic's lien all of the beneficiaries under a deed of trust are easily ascertainable, thus the trial court could require the plaintiff to notify each member of the defendant-class by registered mail or some other, similar method. (See *Chance* v. *Superior Court* (1962) 58 Cal.2d 275, 290 [23 Cal.Rptr. 761, 373 P.2d 849] [notice by registered mail required in a class action to foreclose a deed of

trust with multiple beneficiaries].) Such a ruling would still place a burden on the plaintifff to discover the addresses of hundreds of beneficiaries.

In short, there are instances when the law and justice are not fully synchronized. To require a mechanic, in order to obtain money due for labor performed or material furnished, to serve 252 beneficiaries, or to undertake onerous efforts to ascertain each beneficiary's address or their attorney-in-fact appears to be one such instance. I would hope the Legislature gives consideration to this problem: it is, after all, required by the Constitution to provide "for the speedy and efficient enforcement of such liens." (Cal. Const., art. XIV, § 3.)[1]

Kaufman, J., concurred.

**BROUSSARD, J.**—I concur in the judgment and in the court's opinion insofar as it holds that the default judgment in the foreclosure proceeding was not binding on the beneficiaries of the deed of trust. The Court of Appeal had held that the default judgment was binding, and I concur in the reversal. We need not go any further in this case.

I do not concur in the statement on page 459 of the majority opinion and footnote 3 appended to it which go further and conclude that the lienor forfeited its rights. Issues of potential other equities were not addressed in the briefs filed in this court. The case cited in the footnote, *Riley* v. *Peters* (1961) 194 Cal.App.2d 296 [15 Cal.Rptr. 41], is not necessarily controlling. In that case the mechanic's lienor failed to name the parties to the trust deed in the foreclosure action within 90 days of the filing of the lien as required by Code of Civil Procedure section 1198.1. In the instant case, the lienor commenced its action within the 90-day period and named the beneficiaries. The code section does not appear applicable.

We should limit our decision to the issue that was briefed to us and not reach out for additional matters not necessary to our decision.

---

[1] As a suggestion: perhaps when there are more than a specified number of beneficiaries, they should be required to name an agent for service of process, or else the mechanic could be permitted to serve notice by publication. (See, e.g., Civ. Code, § 2924b, subd. (d).) Or there may be *other viable solutions.*